UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYANT HARRIS,
     Plaintiff,

v.

GEORG LIEBER, DAVID
KENNAMER, RYAN DOBBS,
NICOLAS WALLEMAN,
VICTORIA DALLAS, ANDREW
SNYDER, RODOLFO LOPEZ,
KARIANN NELSON, BRIAN
ROSS, ROBERT PICKELL,
CHRISTOPHER SWANSON,
GENESEE COUNTY, and
DANIEL EDMONSON,
     Defendants.
_____/

Case No.: 20-11113

David M. Lawson
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION:
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND
MOTION FOR SUMMARY JUDGMENT (ECF Nos. 57, 59)**

## I.     BACKGROUND

### A.     Procedural History

Plaintiff Bryant Harris filed this civil rights suit on December 1, 2020

without the assistance of counsel and is proceeding *in forma pauperis*.  (ECF Nos.

1, 3).  This case was referred to the undersigned for all pretrial matters.  (ECF No.

11).  Remaining defendants Victoria Dallas, Ryan Dobbs, Daniel Edmonson,

Genesee County, David Kennamer, Georg Lieber, Rodolfo Lopez, Kariann Nelson, Robert Pickell, Brian Ross, Andrew Snyder, Christopher Swanson, and Nicolas Walleman moved for judgment on the pleadings on August 26, 2021, and then for summary judgment on September 24, 2021.  (ECF Nos. 57, 59).  The motions are fully briefed and are ready for report and recommendation.

For the reasons discussed below, the undersigned **RECOMMENDS** the motion for judgment on the pleadings be **GRANTED IN PART, DENIED IN PART**, the motion for summary judgment be **GRANTED** as to the remainder, and this case be dismissed.

B.    <u>Complaint Allegations</u>

Defendants Monica Wilson, Mark Ross (both of whom were Plaintiff's court-appointed criminal defense attorneys), and the Genesee County Sheriff were previously dismissed.  (ECF Nos. 40, 47).  The allegations below pertain only to the remaining defendants.  Plaintiff brought this action under 42 U.S.C. § 1983 alleging violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (ECF No. 1, PageID.8).  The allegations relate to events concerning his arrest and those which occurred while later housed at the Genesee County Jail.  Generally stated, the claims include unlawful search and seizure of his person and his cellular telephone, denial of access to the courts due to the lack of a law library and effective grievance process

at the Genesee County Jail, detaining him for more than 72-hours before he was
arraigned, and holding probable cause conferences without him present.

According to the complaint, on August 22, 2019, after he was "illegally"
arrested for human trafficking and related computer crimes, Plaintiff was "illegally
. . . searched" by defendants Lieber, Kennamer, Dobbs, Dallas, Walleman, Lopez,
and Snyder when he entered the Genesee County Jail to post bond for his
girlfriend. (*Id.* at PageID.10, 11). The complaint fails to provide sufficient details
related to the respective actions of those involved in the arrest. At any rate, he
asserts the defendants did not have probable cause to arrest him. Plaintiff contends
the defendants submitted false police reports on August 22 and 23, 2019, to justify
the illegal arrest. The human trafficking and computer-related charges were later
dismissed. He alleges defendant Nelson illegally seized and searched his cellular
telephone on August 23, 2019, as the search was not authorized by a warrant until
August 28, 2019. (*Id.*).

Plaintiff listed additional allegations of events that occurred while he was
detained. While at the jail, Defendant Edmonson allegedly illegally strip-searched
Plaintiff on August 22, 2019, without a search warrant or probable cause. In the
briefing on both of Defendants' motions, both parties make clear this search
occurred during the booking process after Plaintiff's arrest. According to Harris,
defendants Pickell and Swanson were the "enforcers of all Jail policies and rules."

(*Id.* at PageID.10).  While acting in that capacity, these two defendants denied Plaintiff access to a law library and to a "sufficient grievance system."  (*Id.*).  He alleges Genesee County is also liable for denial of access to the law library and not having an adequate grievance system.  According to Plaintiff, it is "literally impossible to file a lawsuit due to not having a law library at all."  (*Id.* at pageID.19).  He also alleges he was not arraigned within 72-hours of his arrest and there were five probable cause hearings or conferences without his presence during which court proceedings were adjourned without his consent.  (*Id.* at PageID.11).  During October 2019, defendant Ross allegedly ordered Plaintiff's jail cell to be searched.  Unspecified defendants "destroyed" the cell and damaged and removed legal documents and commissary items.  (*Id.* at PageID.10).

      C.   <u>Pending Motions</u>

      Defendants moved for judgment on the pleadings.  They argue Plaintiff's threadbare allegations are insufficient to state a plausible claim to relief against any of the defendants and that they are protected by qualified immunity.  (ECF No. 57). In response, Plaintiff argues his complaint sufficiently states his claims and there are issues of material fact.  (ECF No. 62, PageID.566-58).  He provided more facts in his response.  Defendant Ross not only ordered his cell to be searched, but also watched while jail personnel destroyed his property.  (*Id.* at PageID.567).  As to his denial of access claims, Plaintiff asserts his appointed criminal attorney was

ineffective.  Because of the attorney's alleged ineffectiveness, he wanted to access the law library to conduct research for his trial.  Yet he was denied.  He submitted several grievances about "jail conditions" but the grievance system only allowed an inmate to write the initial grievance; there was no process by which to appeal. (*Id.* at PageID.567).  Plaintiff then provided argument on issues not raised in his complaint or the motion for judgment on the pleadings about a subpoena issued without notice to Plaintiff and that Kennamer allegedly seized Plaintiff's outgoing mail.  (*Id.* at PageID.568-69).  Attached to Plaintiff's response are documents he uses to support his claim that there are issues of material fact that must go to a jury, including the felony complaint for human trafficking, the order dismissing the charges, and a forensic extraction report for a "suspect[s]" cellular telephone. (ECF No. 62, PageID.570-604).

Defendants did not explain why they filed two dispositive motions with different legal standards.  In the motion for summary judgment they argue: (1) Plaintiff's assertion of the Fifth Amendment to keep from testifying at his deposition precludes Plaintiff from offering evidence on the subject of his assertion of the privilege, (2) Defendant Kennamer had probable cause to arrest Plaintiff based on his interaction with the alleged victims and Defendant Sgt. Lopez's report, (3) Defendant Nelson's act of charging Plaintiff's cell phone before the search did not violate constitutional law and Nelson did not conduct the search of

the telephone until after the search warrant had issued, (4) Defendants Genesee County, Pickell, and Swanson cannot be held liable for denial of a law library or an ineffective grievance process, and (5) the claim of filing false police reports against defendants Lieber, Walleman, Dobbs, and Dallas should be dismissed both because Plaintiff asserted the Fifth Amendment privilege against testifying and because their reports, submitted after Plaintiff was arrested, had no bearing on his incarceration.  In light of their argument that there is no constitutional violation, the defendants argue they are entitled to qualified immunity.  (ECF No. 59).

As to asserting the Fifth Amendment privilege against self-incriminating testimony, Plaintiff asserts defendants' counsel was conducting the deposition "in bad faith and to oppress and harass" him.  Counsel made false prostitution charges at the deposition and "tried to damage plaintiff's credibility by making derogatory and defaming statements."  (ECF No. 66, PageID.713).  He moved to terminate the deposition pursuant to Fed. R. Civ. P. 30(d)(3).  For these reasons, he invoked the Fifth Amendment.  He also argues there are questions of material fact on all his claims that preclude summary judgment.  For instance, he asserts it is not enough that he rented a hotel room for another person to charge him with human trafficking, especially since no sexual acts were exchanged and there was no evidence the women in the hotel room were prostitutes.  After his arrest at the preliminary examination, both women testified Plaintiff did not force or encourage

prostitution and the officers tried to coerce them into lying that there were

trafficked.  (*Id.* at PageID.714).  He challenges the credibility of Kennamer and

Walleman, asserting they lied in reports and under oath.  (*Id.* at PageID.717-18).

Plaintiff again asserted claims that were not pleaded in the complaint: defendants'

counsel served a third-party subpoena without giving Plaintiff notice, Defendant

Kennamer seized Plaintiff's mail without a search warrant, and while he was

incarcerated defendants harassed persons with whom Plaintiff communicated.

## II.    ANALYSIS AND RECOMMENDATIONS

The undersigned will initially address Defendants' motion for judgment on

the pleadings.  As discussed more fully below, the undersigned suggests the

motion be granted in part and the claims against Genesee County and the

supervisor defendants be dismissed.  As to the remaining claims, because

Defendants could glean sufficient factual material from the complaint to attack the

merits of the claims on a motion for summary judgment, the undersigned will

address the remainder in that context.  There, the undersigned recommends the

motion be granted as to the claims not dismissed on the motion for judgment on the

pleadings.

Preliminarily, the undersigned will not address the new claims raised in

Plaintiff's response briefs regarding Kennamer allegedly taking Plaintiff's mail

without a warrant and concerning defense counsel serving a third-party subpoena

without first giving notice to Plaintiff.  These are not claims raised in the complaint and are not proper subjects for the response briefs.

    A.    <u>Motion for Judgment on the Pleadings</u>

    1.    Standard of Review

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is substantially the same as that for a motion to dismiss under Rule 12(b).  *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss.") (citations omitted).  When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

The Court also holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). At the same time, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow

Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

    2.    Discussion

        a.    Municipal Liability

Construing the complaint liberally,[1] Plaintiff lodges several claims against defendant Genesee County: (1) in violation of the First Amendment, it denied Plaintiff access to a law library and to an effective grievance system and (2) it denied Plaintiff due process by failing to hold an arraignment within 72-hours of his arrest and failing to conduct a preliminary examination within 21-days of his arrest. Plaintiff also alleges "the courts" held five probable cause conferences without his presence.[2] (ECF No. 1, PageID.11). As explained below, aside from Plaintiff's failure to plead sufficient factual detail to sustain these claims, he also failed to state a *Monell* claim against the County.

The First Amendment claims relate to denial of access to the courts. This amendment protects inmates from being denied meaningful access to the courts by the states. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). An inmate alleging a denial

---

[1] Defendants assert it is unclear which alleged conduct violates the named constitutional amendments because Plaintiff merely listed them without providing a narrative of alleged wrongdoing. Taking a liberal view of the complaint, the undersigned is capable of connecting alleged conduct with alleged violations, such as construing the denial of access to a law library as a denial of access to the courts claim under the First Amendment.

[2] The complaint can be read to assert this "claim" against dismissed defendant Monica Wilson. To the extent that this claim is raised against Genesee County, this analysis also applies.

of access to the courts must prove that he suffered an actual injury or harm

connected to a direct appeal from a conviction, or habeas corpus petitions, or civil

rights actions under § 1983.  *Id.* at 349, 355; *Walker v. Mintzes*, 771 F.2d 920, 932

(6th Cir. 1985) (An inmate may show actual harm by demonstrating that a denial

of his access to the courts somehow prejudiced his rights in a lawsuit.).  To state

a § 1983 claim for the denial of access to the courts, a plaintiff must allege that the

deprivation resulted from intentional conduct, *see Sims v. Landrum*, 170 F. App'x

954, 957 (6th Cir. 2006), and must make some showing of prejudice or actual

injury resulting from the challenged conduct.  *Lewis*, 518 U.S. at 351.  This can be

done by showing that the deprivation resulted in "the late filing of a court

document or the dismissal of an otherwise meritorious claim." *Pilgrim v.

Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The factual underpinnings of this claim are unclear.  Plaintiff asserted he

was denied access during "September or October 2019."  (ECF No. 1, PageID.10).

He later alluded to "trying to file a civil rights lawsuit" once in his complaint, but

failed to allege any prejudice to this litigation, a criminal appeal, or any other civil

rights action.  (ECF No. 1, PageID.14); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th

Cir.1996) ("An inmate who claims his access to the courts was denied fails to state

a claim without any showing of prejudice to his litigation").  Plaintiff managed to

file this action on March 26, 2020 with no apparent prejudice from being denied

11

access to a law library during the period referenced above. Having failed to allege

any prejudice to a civil rights suit, the claim should be dismissed.

In his response to the motion for judgment on the pleadings, Plaintiff

changed the allegation. Now, he asserts his criminal defense attorney was

ineffective, and thus he needed access to the law library to prepare for his criminal

trial. Based on this new revelation, the claim does not appear to be connected to a

civil rights suit. (ECF No. 62, PageID.567). If this is indeed the basis for the

claim, the claim should be dismissed. "[A] prisoner's constitutionally-guaranteed

right of access to the courts [is] protected when a state provides that prisoner with

either the legal tools necessary to defend himself, e.g., a state-provided law library,

*or the assistance of legally trained personnel.*" *Holt v. Pitts*, 702 F.2d 639, 640

(6th Cir. 1983) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)) (emphasis added).

Because Plaintiff had two court-appointed criminal attorneys, his denial of access

to the courts claim fails as a matter of law.

The inadequate grievance process claim should be dismissed because there

is no constitutional right to an effective grievance process. *See Walker v. Mich.

Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (collecting cases); *Argue v.

Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *see also Henricks v. Ohio Dept.

of Rehab. & Correction*, 2011 WL 3652423, at *6 (S.D. Ohio Aug. 18, 2011)

(Inmate failed to state a denial of access to the court claim based on prison

official's failure to follow the grievance process because inmate did not allege that the failure caused injury or precluded meaningful access to the court).

Plaintiff's due process claims are not entirely clear. He claims he was denied an arraignment within 72 hours of his arrest under Michigan law, but did not allege whether his arrest was with or without a warrant. The necessary procedures differ depending on the type of arrest. *See generally Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991) (requiring probable cause determinations to be made within forty-eight hours of warrantless arrests); *People v. Whitehead,* 604 N.W.2d 737 (Mich. Ct. App. 1999) (same); M.C.L. § 764.1b (a person arrested pursuant to a warrant must be presented to a magistrate "without unnecessary delay"). In any event, because he did not properly state a *Monell* claim, this claim should be dismissed.

Plaintiff also did not state a viable claim against Genesee County. "A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under § 1983. 436 U.S. at 700-01. However, such a claim may be brought only when "execution of a government's policy or custom, whether made by its lawmakers or

13

by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted). For these reasons, to succeed on a *Monell* claim, a plaintiff must first allege that the municipality itself caused a constitutional tort. *Monell*, 436 U.S. 658 at 691. "A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. Second, a plaintiff must show that the alleged conduct qualifies as a policy. *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. *Monell* liability may also attach when a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91. A plaintiff must claim that "a deliberate choice to follow a course of action is made

from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Third, a plaintiff must show causation. In other words, a plaintiff must connect the policy to the particular injury alleged.

Plaintiff's bare allegations that Genesee County is liable for constitutional violations does not state a *Monell* claim. He did not connect the County to any policy, custom, or official decision infringing on constitutional rights—either for denial of access to the courts or regarding pretrial due process procedures. *See, e.g.*, *Harris v. Wickersham*, 2016 WL 4523574, at *5 (E.D. Mich. Aug. 30, 2016) (dismissing access to law library claim because complaint was "devoid of allegations that any Macomb County Jail policy or custom led to the denial of his access to the law library" nor any specific action taken by Sheriff Wickersham personally that led to the alleged deprivations of his rights in this regard.") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986)). Thus, Genesee County should be dismissed.

### b.    Supervisory Liability

The claims against defendants Sheriff Pickell, Undersheriff Swanson, and Deputy Ross amount to an allegation that they are liable for the conduct of their subordinates and thus should be dismissed.

15

Plaintiff alleges defendants Pickell and Swanson are enforcers of jail rules and thus are liable for not providing a sufficient grievance process at the Genesee County Jail.  He alleges the grievance system did not allow inmates to appeal a grievance and only allowed 120 characters to explain the issue.  (ECF No. 1, PageID.14).  In his response brief, Plaintiff argues Pickell and Swanson "should have made steps necessary to remedy those issues but did nothing."  (ECF No. 62, PageID.568).  Plaintiff alleges defendant Ross ordered his jail cell to be searched sometime during October 2019.  Unspecified defendants then searched the cell and removed legal documents and commissary items.  (ECF No. 1, PageID.10).  Plaintiff did not allege Ross ordered the unnamed defendants to remove or destroy things.

Apart from the reason that Plaintiff did not sufficiently plead a denial of access to the courts claim, Pickell and Swanson should be dismissed because the allegations against them are based on supervisory liability, the failure to act, or both.  A civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983.  *See Monell*, 436 U.S. at 691-92 (Section 1983 liability cannot be based on a theory of *respondeat superior* or vicarious liability); *Nwaebo v. Hawk–Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (To recover against a given defendant for a claimed constitutional violation, the plaintiff "must allege that the defendant [was] personally involved in the alleged

deprivation of federal rights.") (citing *Rizzo v. Goode*, 423 U.S. 362, 373–77 (1976)).  A supervisor cannot be held liable under § 1983 absent a showing that the supervisor personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See, e.g.*, *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Even the failure to act in the face of knowledge of unconstitutional conduct is insufficient.  *Colson v. City of Alcoa, Tennessee*, 2017 WL 4019596, at *6 (E.D. Tenn. Sept. 11, 2017) (collecting cases).

Plaintiff failed to state a claim against Pickell and Swanson because be alleges no more than a theory of supervisory liability and failure to act.  There are no allegations that either of these defendants were personally involved in allegedly unconstitutional conduct or that they authorized, approved, or knowingly acquiesced in allegedly unconstitutional conduct.

As for Ross, merely alleging Ross ordered Plaintiff's jail cell be searched does not amount to unconstitutional conduct.  Plaintiff attributes the destruction of legal documents and other property to other unspecified defendants.  He did not allege Ross's personal involvement in any unconstitutional conduct.

In response to the motion, however, Plaintiff asserts Ross "watched the other officers completely destroy Plaintiff's cell."  (ECF No. 62, PageID.567).  This fact was not included in the complaint.  But even considering the added fact that Ross

watched the destruction of property, the claim fails. Construing the claim liberally, Plaintiff suggests the destruction of legal documents equates to a denial of access to the courts claim. Again, to sustain such a claim, the plaintiff must allege he suffered an actual injury or harm connected to a direct appeal from a conviction, or habeas corpus petitions, or civil rights actions under § 1983. The complaint and this new fact are deficient for two reasons. First, it is not apparent that the destroyed documents concerned a criminal matter or a civil rights lawsuit. Second, Plaintiff did not allege the loss of legal documents hindered him in pending or contemplated litigation by causing a case to be dismissed, preventing him from filing a claim, or causing him to miss court-imposed deadlines.

As to the destruction of unspecified tangible property, the claim fails for another reason pursuant to *Parratt v. Taylor*, 451 U.S. 527 (1981). There, the Supreme Court held that the negligent deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. The *Parratt* doctrine has been extended to cover intentional deprivations of property. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984)). A plaintiff who brings a § 1983 procedural due process claim "must plead and prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). If a plaintiff in a § 1983 action fails to demonstrate the inadequacy of

state remedies, the case should be dismissed.  *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).  Plaintiff's claims fail because he did not allege that state post-deprivation remedies were inadequate to redress his claimed losses.  Further, the Sixth Circuit in *Copeland* summarized the post-deprivation remedies available to state prisoners in Michigan, including an action to recover possession of goods or chattels and a procedure by which an individual may be compensated for alleged unjustifiable acts of state officials.  57 F.3d at 480.  The court determined that "the appeal of administrative decisions to the state circuit court provides an adequate remedy for violations of due process for purposes of *Parratt v. Taylor*."  *Id.* (citations omitted)*; see also Teague v. Bieganksi*, 2021 WL 5741292, at *2 (E.D. Mich. Dec. 2, 2021) (discussion state post-deprivation remedies available to Michigan plaintiffs).  Because adequate state remedies were available to Plaintiff, no deprivation of property without due process resulted.  So this claim should be dismissed.

<blockquote>c.     Eighth Amendment "Claim"</blockquote>

Among the list of violated Amendments, Plaintiff included the Eighth Amendment.  (ECF No. 1, PageID.8).  "But the Eighth Amendment applies only to those individuals who have been tried, convicted, and sentenced."  *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)).  Pretrial detainees like Plaintiff are protected by the

Fourteenth Amendment's Due Process Clause.  That said, "under the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.'"  *Id.* (quoting *Thompson v. Cty. of Medina, Ohio,* 29 F.3d 238, 242 (6th Cir. 1994)).  The Eighth Amendment deliberate indifference analysis applies.

There is no factual development to suggest an Eighth Amendment claim.  As an aside, the defendants did not specifically argue that the Eighth Amendment claim should be dismissed except to the extent that they argue the list of violations does not state a claim.  Plaintiff is proceeding *in forma pauperis* here, so the complaint can be screened by the Court pursuant to 28 U.S.C. § 1915(e)(2).  Dismissal is required at any time if complaints or claims are frivolous or malicious, if they fail to state a claim for relief, or if they seek monetary relief from a defendant who is immune from such relief.  *Hill v. License*, 2018 WL 1787295 (E.D. Tenn. Apr. 13, 2018).

To state a claim for cruel and unusual punishment, a plaintiff must satisfy an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1970).  To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of

serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005).  The subjective component of an Eighth Amendment violation requires a prisoner to establish that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991).  Thus, "the prison official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837-38.

The complaint lacks any allegations suggesting he experienced cruel and unusual punishment under *Farmer*.  As Plaintiff did not make the required showings, the claim should be dismissed.

### d.    Remaining Claims

The remaining claims against the remaining defendants are that, to put them simply, he was arrested based on falsified police reports and thus without probable cause, he was illegally searched after his arrest, and defendant Nelson illegally searched his cell phone before the issuance of a search warrant.  Defendants argue Plaintiff failed to sufficiently plead these claims and they are entitled to qualified immunity because Plaintiff did not sufficiently plead a constitutional violation. (ECF No. 57).

Giving Plaintiff the benefit of the doubt, the undersigned will address these claims in the context of Defendants' Rule 56 motion for summary judgment.

Defendants' argument that they cannot decipher Plaintiff's claims lacks persuasiveness given their ability to challenge the merits of the claims in their motion for summary judgment.

  B. <u>Motion for Summary Judgment</u>

   1. Standard of Review and Qualified Immunity

Pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

  "The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Supreme Court has established a two-part test to determine whether qualified immunity is applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  One part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.*  If this question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id.*  If both questions are resolved in the affirmative, then the

doctrine of qualified immunity would not apply, and the case could proceed.  On

the other hand, if the answer to either question is no, then qualified immunity

obtains.  The court may consider the questions in whichever order makes the most

sense dependent on the facts of the case.  *Pearson v. Callahan*, 555 U.S. 223, 227

(2009).  Generally under the second prong of this analysis, "[a] right is clearly

established if '[t]he contours of the right [are] sufficiently clear that a reasonable

official would understand that what he is doing violates that right.'"  *Hearring v.*

*Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (quoting *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)) (citing *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009)).

"While there need not be 'a case directly on point' for the law to be clearly

established, 'existing precedent must have placed the statutory or constitutional

question beyond debate.'"  *Barton v. Martin*, 2020 WL 595981, at *4 (6th Cir.

2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  "When a defendant

invokes qualified immunity in a motion for summary judgement, the plaintiff must

offer sufficient evidence to create a genuine dispute of fact that the defendant

violated a clearly established right."  *Folks v. Petit*, 676 F. App'x. 567, 569 (6th

Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608-09 (6th Cir.

2015)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56.

Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, .

. . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S.

506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of*

*Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)

(quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)).  The Sixth Circuit has made clear that, when opposing summary judgment,

a party cannot rely on allegations or denials in unsworn filings and that a party's

"status as a *pro se* litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present

any evidence to defeat the government's motion").

     2.    Discussion

          a.    Invocation of Fifth Amendment

Plaintiff invoked the Fifth Amendment right against self-incrimination

during his deposition a few times.  Defendants argue they are entitled to an adverse

inference against him and because he invoked the privilege, Plaintiff cannot testify

later to the matters on which he used the privilege.  For example, defendants'

counsel began questioning Plaintiff about Defendants Dobbs and Dobbs'

involvement in a constitutional violation.  Plaintiff testified Dobbs was involved in the investigation and perhaps involved in his arrest, but he could not pinpoint Dobbs' exact conduct.  Counsel kept pressing and Plaintiff appeared to be become frustrated.  Finally, Plaintiff stated, "I plead the Fifth."  (ECF No. 59-11, PageID.471-73).  Thus, Defendants argue Plaintiff cannot later testify about what Dobbs did to violate constitutional rights.  (ECF No. 59, PageID.394-96).

It appears the use of the Fifth Amendment here is less about self-incrimination than frustration or lack of knowledge of specific details.  Plaintiff relied on the Fifth Amendment in his testimony about the conduct of these defendants: Dobbs, Snyder, Walleman, Lopez, and Edmonson.  (ECF No. 59-11, PageID.468, 473, 475).  He also used the privilege in response to questioning about the illegal substances found during the strip-search.  (*Id.* at PageID.455-57).

An "adverse inference can only be drawn when independent evidence exists as to the facts about which the party refuses to answer."  *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 621 (E.D. Ky. 2011) (amended on other grounds) (citations omitted); *see White v. City of Cleveland*, 417 F. Supp. 3d 896, 904-06 (N.D. Ohio 2019) (explaining requirement that suppressed testimony be relevant to the claims before an adverse inference may be drawn).  An adverse inference may be drawn, for example, when the party uses the Fifth Amendment to

enable him to avoid meeting his burden of proof or preventing the discovery of information central to the litigation.  *White*, 417 F. Supp. 3d at 906.

Defendants are correct that once a civil litigant invokes the Fifth Amendment privilege on an issue, the litigant is thereafter barred from introducing other evidence on that issue.  *See Traficant v. Comm'r of I.R.S.*, 884 F.2d 258, 265 (6th Cir. 1989); *United States v. Sixty Thousand Dollars in U.S. Currency*, 763 F. Supp. 909, 914 (E.D.Mich.1991) ("The court would not tolerate nor indulge a practice whereby a [party] by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.").  Specificity as to which evidence should be limited when a party attempts to limit evidence or testimony based on the opposing party's assertion of their Fifth Amendment rights is required.  *See Dunkin' Donuts v. Taseki*, 47 F. Supp. 2d 867, 873 (E.D. Mich. 1999) ("*Traficant* was careful to note that 'when the issue is whether a court may impose broad limits on the admissibility of evidence, the cases permit only limits *directly related* to the scope of the asserted privilege.") (emphasis in original).

Plaintiff largely used the Fifth Amendment to avoid meeting his burden of establishing the personal involvement of each defendant in a constitutional violation.  This is an inappropriate use of the privilege against self-incrimination. At any rate, as explained below, even if the Court were to look past these

violations, the motion for summary judgment should still be granted.  In other words, Plaintiff's testimony or lack thereof is not material to the determination.

           b.      False Police Reports and Arrest Without Probable Cause

In his complaint, Plaintiff alleged defendants Lieber, Kennamer, Dobbs, Dallas, Walleman, Lopez, and Snyder arrested him for human trafficking without probable cause.  He alleges Defendants Lieber, Walleman, Dobbs, Dallas, and Kennamer submitted false police reports to justify the arrest.  (ECF No. 1, PageID.10).

Defendants argue Defendant Kennamer had probable cause to arrest Plaintiff based on facts set forth in these defendants' affidavits and police reports. Defendant Kennamer attested that his police report, attached to his affidavit, was prepared by him and is true.  (ECF No. 59-2, PageID.415, at ¶ 2).  According to the report, on August 22, 2019, he was part of a law enforcement team conducting a human trafficking rescue operation.  During the operation, Defendant Lieber gave Kennamer an investigation packet including an ad posted on skipthegames.com stating a particular female was "new in town, open minded fun best in town."  (*Id.* at PageID.418).  Also included were pictures of a white female exposing her genitals.  That day, Kennamer used an undercover recorded telephone number to contact the telephone number posted on the ad.  He summarized the exchange:

        Kennamer: Yea babe you available
        Number: yes available now

> Number: 80ss 100hh 160/45min 200hr
> Kennamer: you got a safe place
> Number: Yes
> Kennamer: room or house
> Number: room
> Kennamer: what about anal
> Number: Im [sic] discreet over phone we can talk when
> you get here
> Number: Im [sic] calling from a new phone

(*Id.*).  Around an hour and a half later, Kennamer received a telephone call from a different telephone number.  During the ensuing telephone conversation, the female on the telephone call told Kennamer to go to the Roadway Inn where she would give him the room information.  Around ten minutes later, the female called again to tell Kennamer she was at the Quality Inn room 226.

When Kennamer arrived at room 226, he was greeted by a white female wearing the same clothing observed in the ad.  She was later identified as Alisha Matthews.  Kennamer entered the room and asked to use the bathroom.  Matthews informed Kennamer a woman was in the bathroom, and "it is her very first time ever."  (*Id.*).  This second woman was later identified as Shamia Gonzalez.  Matthews instructed Kennamer to put the money on the table and stated she wanted to be sure Kennamer was not a police officer by having him expose himself.  He assured he was not a cop.  Matthews gave Kennamer a hug and exposed her breast.  She then told him it would be an additional $100 for Gonzalez

to "play."  (*Id.*).  At that point, the arrest team entered the room and took both women into custody.  (*Id.* at PageID.418-19).

After taking Matthews and Gonzalez into custody, defendant Lopez spoke with the hotel front desk manager.  The manager stated the hotel room was reserved by a black male and provided Lopez a copy of that person's driver's license—the male identified was Plaintiff Bryant Harris.  The desk manager retrieved video recordings of Plaintiff at the front desk reserving the room and of the parking lot appearing to show Plaintiff in a Jeep Compass.  (ECF No. 59-3, PageID.423).

Later that day, Kennamer observed Plaintiff on the telephone in the lobby of the Genesee County Jail.  Kennamer took him into custody.[3]  (ECF No. 59-2, PageID.419).

During the booking process following the arrest, Plaintiff was strip-searched by Defendant Edmonson.  Edmonson found what was ultimately determined to be heroin, fentanyl, and cocaine lodged between Plaintiff's buttocks.  (ECF No. 59-9, PageID.447-49).  As a result, he was charged with bringing contraband into a prison and for possession of a controlled substance.

---

[3] While Plaintiff accuses a multitude of defendants for the false arrest, only one defendant, Kennamer, physically arrested him.  The undersigned construes the false arrest claim not as a claim against only the person who physically arrested him, but all those officers involved in the investigation and determination of probable cause.

On October 2, 2019, Judge David Goggins held a preliminary examination hearing at the 67th District Court for Genesee County, Michigan on the trafficking, computer crimes, and drug-related charges.  Defendants attached an excerpt of the hearing transcript, including only Judge Goggin's ruling from the bench dismissing the human trafficking and computer crimes charges.  Judge Goggins recounted the testimony of Shamia Gonzalez, noted above being the second woman in the hotel room that was in the bathroom.  Ms. Gonzalez testified during the preliminary examination that she willingly participated in what was to take place at the hotel, i.e., she was a prostitute and wanted to "learn the game" and make money.  (ECF No. 59-12, PageID.480).  Although the judge's statements were not very specific, it is clear from them that Plaintiff was one of the drivers who took Gonzalez and Matthews to the hotel to meet Kennamer on August 22, 2019.  (*Id.*).  Based on Gonzalez and Matthews' testimony (which was not recounted), the judge found there was no probable cause to charge Plaintiff with human trafficking and the related computer crimes.  But the judge found probable cause for the drug charges. (*Id.* at PageID.481-82).

In his affidavit, Defendant Snyder, a Sergeant at the Genesee County Sheriff's Office, stated his only involvement in the investigation was his presence in the hotel parking lot when the women were arrested on August 22, 2019 and at the investigation at the hotel the next day, August 23, 2019.  (ECF No. 59-4,

PageID.425).  Plaintiff did not allege any specific facts about Snyder, nor did he proffer any evidence to rebut Snyder's affidavit.

Defendant Dallas stated her involvement in the case was limited to her review and report of electronic evidence after Plaintiff's arrest.  (ECF No. 59-6, PageID.440).  Other than his unsworn assertion that he was arrested by Dallas and other Sheriff's deputies, there is no other mention of Dallas in Plaintiff's response brief, and there is no evidence contradicting Dallas's sworn statement.

Defendant Dobbs swore he was not present at Plaintiff's arrest.  (ECF No. 59-7, PageID.443).

Defendant Lieber declared he was not present for Plaintiff's arrest and that his reports prepared after the arrest were accurate.  (ECF No. 59-10, PageID.451). There are no reports prepared by Lieber attached to the motion.

Defendant Walleman declared he was not present for Plaintiff's arrest and did not prepare a report.  (ECF No. 59-8, PageID.445).  In response, Plaintiff challenges Walleman's credibility because on August 23, 2019, Walleman prepared a report about an interview with one of the alleged trafficking victims, Alisha Matthews.  (ECF No. 66, PageID.736-37).  Defendants explain Walleman did not prepare a report as to Plaintiff's arrest, but he did prepare a report of his interview with Alisha Matthews after her arrest.  (ECF No. 69, PageID.803).  The report is attached to Plaintiff's brief.  (ECF No. 66, PageID.736-37).

In response to this evidence, Plaintiff provided his affidavit.  He stated he can positively identify the persons who arrested him (but did not do so) and that he "never engaged in prostitution acts nor [has he] ever encouraged it or associated with people who do."  (ECF No. 66, PageID.720).  He made no averments related to his arrest and the police reports.  His assertion that the police reports are fake was stated in his complaint and response brief.  The facts and arguments stated in Plaintiff's unverified complaint and unverified motion are not admissible "facts" that can be used to defeat summary judgment.  It is true "[t]he submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. . . .  However, the party opposing summary judgment must show that [he] *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citations omitted) (emphasis in original).  Plaintiff did not meet his burden.

"It is clearly established that arrest without probable cause violates the Fourth Amendment."  *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citation omitted).  "An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed.'"  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (quoting

*Henry v. United States*, 361 U.S. 98, 102 (1959)).  "[T]he officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).  "An eyewitness identification – standing alone – is sufficient to establish probable cause unless the officer has some reason to believe at the time of the arrest that the eyewitness is lying or mistaken." *Thomas v. Noder-Love*, 621 F. App'x 825, 832 (6th Cir. 2015) (citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)).

When the Court is asked to determine whether probable cause existed, it must examine the totality of the circumstances and "consider only the information possessed by the arresting officer at the time of the arrest." *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

Here, the only "reasonable determination" on probable cause is that the officer(s) could reasonably believe they had probable cause to arrest Plaintiff. Defendants presented evidence to establish probable cause: (1) the interaction between Matthews and Kennamer over the telephone and at the hotel establishes

that Matthews intended to engage in sexual activity in exchange for money, (2) Gonzalez was present to participate and "learn the ropes," and (3) the hotel front desk clerk identified Plaintiff as the person who rented the hotel room for Matthews and Gonzalez.  Plaintiff did not submit evidence to create an issue of material fact here.  Further, once probable cause is established, an officer "is under no obligation to continue investigating and may instead pursue the arrest of a suspect."  *Crockett v. Cumberland Coll.*, 316 F.3d 571, 584 (6th Cir. 2003) (citation omitted).  There is no basis on which a reasonable jury could conclude there was no probable cause to arrest.  It is not enough that Plaintiff insists (in unsworn documents) that he was not trafficking the women, but merely rented the room for them.  *See Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  Viewing the facts available to the officers *at the time of the incident*, they had probable cause to believe Plaintiff was involved in human trafficking.

As to the false police reports claim, the claim fails because there was no constitutional violation.  First, "the mere filing of the false police reports, by

themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Landrigan v. City of Warwick,* 628 F.2d 736, 744-45 (1st Cir.1980). If Plaintiff's allegations were construed as a malicious prosecution claim, the claim would fail because he cannot show a lack of probable cause for his arrest. *See Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003).

Second, these defendants are protected by qualified immunity. It is true an officer may be held liable for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999). To overcome an officer's entitlement to qualified immunity, a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth, and (2) that the allegedly false or omitted information was material to the finding of probable cause. *See Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (applying test set forth in *Franks v. Delaware*, 438 U.S. 154 (1973), to evaluate a § 1983 claim); *see also Packer v. City of Toledo*, 1 F. App'x 430, 433-342 (6th Cir. 2001) (unpublished opinion) (noting that the materiality of the false information used to procure a search warrant was a key issue in deciding whether to grant qualified immunity).

Plaintiff simply has not presented evidence to preclude qualified immunity on this claim. There has been no substantial showing that any of the defendants

stated a deliberate falsehood or recklessly disregarded the truth.  The only evidence

remotely leaning towards a falsehood is in Plaintiff's affidavit in which he stated

he has never engaged in prostitution or associated with persons who engage in

prostitution.  A reasonable jury could not rely on this averment to find the

defendants made false reports.  In evaluating a motion for summary judgment, the

court does not make credibility determinations or weigh the evidence.  *Ingram v.*

*City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999) (citing *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 255 (1986)).  That said, Plaintiff must present more than the

"mere existence of a scintilla of evidence" to support his position such that

"reasonable jurors could find by a preponderance of the evidence that the plaintiff

is entitled to a verdict[.]" *Anderson*, 477 U.S. at 252.  "Thus, a form affidavit that

fails to explain how an unsupported conclusion was reached—and is repeatedly

contradicted by other evidence—can fail to constitute competent evidence

establishing a genuine issue of material fact." *Gardner v. Evans*, 920 F.3d 1038,

1055 (6th Cir. 2019) (citing *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir.

1993)).

Plaintiff's affidavit does not constitute competent evidence establishing a

genuine issue of material fact.  This is especially so considering Plaintiff did not

address or challenge Judge Goggins' on-the-record dismissal of his charges.  Judge

Goggins spoke of Matthews and Gonzalez's testimony that they intended to engage

in sexual conduct with Kennamer and that Plaintiff drove them to the hotel.  He does not challenge that he is the person who drove them to the hotel and rented the hotel room for Matthews and Gonzalez.  The police reports reflect the facts as stated by Judge Goggins.  Nor did Plaintiff show the allegedly false information in the reports were material to the finding of probable cause—reports created after the arrest could have no bearing on a finding of probable cause.

### c.    Search of Person after Arrest

Plaintiff alleges and argues the strip-search conducted by Defendant Edmonson that occurred after his arrest violated the Constitution because there was no probable cause for the arrest.  "Under the 'search-incident-to-a-lawful-arrest' exception to the warrant requirement, a law enforcement officer may conduct a full search of an arrestee's person incident to a lawful custodial arrest." *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004).  A prerequisite, of course, is that the arrest be supported by probable cause. *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search. . . .").  Having established above that there was probable cause to arrest Plaintiff, Plaintiff's § 1983 claim related to the search incident to arrest must be dismissed.

d.      Search of Cell Phone Without Search Warrant

Plaintiff contends Defendant Nelson illegally searched his cellular telephone

before the issuance of a search warrant.  In support of this contention, Plaintiff

provided a forensic extraction and examination report.[4]  (ECF No. 66, PageID.723-

26).  The defendants also submitted a forensic extraction and examination report.

(ECF No. 59-5, PageID.431-33).  The reports submitted by the parties differ.

Plaintiff's report discusses two telephones belonging to victims in a human

trafficking case.  The two telephones in Plaintiff's report underwent data extraction

on August 22, 2019.  (ECF No. 66, PageID.724).

The report submitted by Defendants discusses one telephone belonging to

the suspect, "Harris," in a human trafficking case and another telephone connected

to the suspect that was found in the hotel room.  According to Defendants' report,

the telephone belonging to Harris and the telephone found in the hotel room were

connected to a power source to charge on August 23, 2019.  The telephone

belonging to Plaintiff underwent data extraction on August 28, 2019.  The

telephone found in the hotel room could not be analyzed because it could not be

---

[4] Plaintiff also attached a forensic examination and extraction report in response to the motion for judgment on the pleadings.  (ECF No. 62, PageID.583-84).  Comparing this submission to the reports provided in support of and in response to the motion for summary judgment, it is clear this submission is a combination of the first page of the report regarding Plaintiff's cellular telephone and the second page of the report about the victims' phones.  Put together, it gives the appearance, albeit a disjointed appearance, that Plaintiff's phone was searched on August 22, 2019.

placed in airplane mode.  (ECF No. 59-5, PageID.432-33).  The search warrant for Plaintiff's telephone was signed August 28, 2019.  (*Id.* at PageID.434).

Summary judgment should be granted in Nelson's favor on this claim.  A search of personal property pursuant to a valid search warrant, generally speaking, is lawful.  *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995); *Johnson v. United States*, 333 U.S. 10, 14 (1948).  Plaintiff's argument relies on the extraction report for the victims' cellular telephones which were searched August 22, 2019.  No reasonable jury could find in Plaintiff's favor based on the search of a telephone that did not belong to him.  By contrast, a reasonable jury could only find in Nelson's favor based on her affidavit attesting to the truth of the extraction report (ECF No. 59-5, PageID.428-29) and the report itself which establishes that Plaintiff's telephone was not searched until the search warrant was signed on August 28, 2019.  As Plaintiff raises no objection to the search warrant, the search of the telephone was lawful.

C.    <u>Conclusion</u>

The undersigned makes the following recommendations on the motion for judgment on the pleadings:

- Defendants Genesee County, Pickell, Swanson, and Ross be dismissed for Plaintiff's failure to plead a proper *Monell* claim and for his assertion of supervisory liability

- The Eighth Amendment claim be dismissed for Plaintiff's failure to plead such a claim

As to the motion for summary judgment, the undersigned recommends the motion be granted with respect to the remaining claims of false arrest, false police reports, illegal search of person, and illegal search of a cellular telephone.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion for judgment on the pleadings (ECF No. 57) be **GRANTED IN PART, DENIED IN PART**, the motion for summary judgment (ECF No. 59) be **GRANTED** with respect to claims not dismissed on the motion for judgment on the pleadings, and this case be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 10, 2022          s/Curtis Ivy, Jr.
                                 Curtis Ivy, Jr.
                                 United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 10, 2022, by electronic means and/or ordinary mail.

                                 s/Kristen MacKay
                                 Case Manager
                                 (810) 341-7850